Chief Judge David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR23-5303DGE |
| Plaintiff, | |
| v. | UNITED STATES' SENTENCING MEMORANDUM |
| BRADY LEE ELTZ, | |
| Defendant. | |

It is not difficult to conclude that Brady Eltz was up to no good on October 4, 2023. He not only had multiple firearms – handguns, machineguns, rifles, a shotgun – but also two explosive devices, body and face armor, knives, masks, and a voice-changing device. The United States respectfully recommends the Court impose a custodial sentence of 51 months followed by a three-year term of supervised release, and order payment of the mandatory fee of $200.00. The recommended 51-month sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

# I.    BACKGROUND

**A.    Offense Conduct**

Brady Eltz had a 9:00am appointment at a Fife auto glass repair business on October 4, 2023, to replace the rear window of a black Mazda. PSR ¶ 8. When Eltz arrived – late – he asked if the technicians would need access to the trunk, and whether he could watch while the repairs were being made. An employee told Eltz he could not watch, for liability reasons; a technician confirmed he would need to access the trunk. Eltz then opened the trunk, revealing multiple weapons inside. According to the technician, Eltz said something to the effect of having "illegal shit" in the trunk and tried obscuring the weapons by moving other items in the trunk on top of the guns.

The manager called Fife Police. As a marked unit pulled up, Eltz went inside the business and asked to use the bathroom. An employee could hear what sounded like items being placed in the cupboard underneath the bathroom sink. Eltz then walked out of the bathroom and began walking toward the front door, where officers detained him.

One officer searched the bathroom and found two firearms, a loaded drum magazine, and two additional, loaded magazines in the bathroom cabinet:



The gun on the top left in the photo above, a black Glock Model 19 9mm handgun, had one round chambered but no magazine seated in it. The Glock was equipped with an auto-sear switch (the small black item visible between the two handguns in the photo), which converts the handgun to a fully automatic weapon. The Glock was later confirmed

United States' Sentencing Memorandum - 2
*United States v. Eltz*, CR23-5303DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

to have been stolen. The gun on the top right, a black and silver H&K USP Compact 9mm handgun (which was in a holster), had a round chambered and a seated magazine loaded with seven rounds of ammunition. The drum magazine (bottom left) was loaded with 25 rounds of ammunition; the two handgun magazines (bottom right) were loaded with 15 and 18 rounds of ammunition, respectively. This arsenal is what Eltz stashed in the bathroom before officers arrived on scene. In other words, this is what Eltz went to the auto glass business carrying on his person. After officers took him into custody and searched him incident to arrest, they found two additional, loaded Glock magazines, another auto-sear "switch," two knives, two ski masks, and indicia of methamphetamine use. PSR ¶ 9.

When officers executed a search warrant on the Mazda later that afternoon, they opened the trunk to find a Mossberg shotgun; a Stag AR-15 rifle modified to function as a machinegun (later confirmed to have been stolen) with a silencer attached (also confirmed stolen); and another H&K handgun (also confirmed to have been stolen) with a round in the chamber, a loaded magazine seated, and a silencer attached. PSR ¶ 10. One of the officers then pulled a black bag from the trunk and discovered two bombs inside it. Officers immediately called bomb technicians and the ATF. The Fife Police Department, Fife Municipal Court, Fife Public Works, and the Fife Jobs Program were all evacuated for about two-and-a-half hours while the bombs were rendered safe.

Once the search of the Mazda continued, officers discovered two more rifles (a Magnum Galil and an Anvil Arms Model AA15 Beowulf Multi-Cal), numerous rifle and pistol magazines, hundreds of rounds of ammunition, a ballistic helmet, torso body armor, groin body armor, face armor, three realistic elderly male face masks, a military thermal scope, holsters, knives, an electronic voice changer, a GPS tracker, and various weapons parts. One officer described the totality of items seized from the Mazda, pictured on the next page (minus the explosive devices), as "beyond concerning."

United States' Sentencing Memorandum - 3
*United States v. Eltz*, CR23-5303DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2
3
4
5
6
7
8
9
10
11
12



13    Indicia of Eltz's possession and use of the vehicle were found in the glovebox,

14 backseat, and trunk. Eltz was booked into the Pierce County Jail, where he remained until

15 posting bond on October 28. PSR ¶ 11.

16 **B.    Procedural History**

17    The ATF obtained a criminal complaint and arrest warrant for Eltz on October 30,

18 charging him with the unlawful possession of firearms (Count 1) and the unlawful

19 possession of machineguns (Count 2), in violation of Title 18, United States Code,

20 Sections 922(g)(1) and (o), respectively. PSR ¶ 11; Dkt. 1. The search for Eltz began.

21    On Halloween afternoon, a WSP trooper pulled Eltz over for not wearing a

22 seatbelt. PSR ¶ 11. Eltz was wearing a Freddy Kruger silicone face mask, red striped

23 sweater, and claw/glove on his right hand. Eltz took the mask off and was cooperative

24 during the traffic stop, even going so far as telling the trooper his license was suspended.

25 The trooper went to his patrol vehicle to run license checks and discovered the ATF

26 warrant. When the trooper returned to Eltz's vehicle to arrest him about ten minutes later,

27 Eltz was visibly shaking and sweating profusely.

United States' Sentencing Memorandum - 4
*United States v. Eltz*, CR23-5303DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

The likely reason for Eltz's change in demeanor was his secretion of multiple bindles of contraband into his rectum. PSR ¶ 12. This came to light during the booking process at the Federal Detention Center – an x-ray/body scan showed what appeared to be three or four baggies, and video from a dry cell (i.e., one with no toilet or sink) showed Eltz ingesting something that he appeared to have removed from inside his body. One small, round, red pill remained on the ground of the cell. Later laboratory analysis confirmed it was oxycodone. PSR ¶ 15.

ATF agents then spent the next three hours or so – between 10:00pm and 1:30am – at the hospital with Eltz. PSR ¶ 13. Around 12:30am, Eltz went into a bathroom and removed two baggies of suspected narcotics. During the half-hour or so that Eltz was in the bathroom, he told the case agent the baggies contained suboxone, oxycodone, tobacco, and marijuana. Eltz also admitted to having ingested 10 or so oxycodone pills while in the dry cell at the FDC. Eltz further admitted to being high on LSD earlier in the day. Hospital staff discharged Eltz around 1:30am on November 1, and agents took him back to the FDC. PSR ¶ 14. However, because another x-ray/body scan at the FDC showed Eltz still had one baggie secreted inside himself, his initial appearance was delayed. He finally made his initial appearance on November 3, 2023, and was ordered detained. PSR ¶ 14; Dkts. 7, 8.

The grand jury indicted Eltz on November 8. Dkt. 11. Eltz entered guilty pleas on January 10, 2024. Dkts. 28, 29.

## II.    SENTENCING GUIDELINES CALCULATIONS

### A.    Offense Level

Counts 1 and 2 group for Guidelines purposes under USSG §3D1.2(c). PSR ¶ 20. The parties have agreed to a base offense level of 20, under USSG §2K2.1(a)(4)(B); a four-level increase for possession of eight firearms under USSG §2K2.1(b)(1)(B); a two-level increase for stolen firearms under USSG §2K2.1(b)(4)(A); and a three-level

United States' Sentencing Memorandum - 5
*United States v. Eltz*, CR23-5303DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

reduction for acceptance of responsibility under USSG §§3E1.1(a) and (b). PSR ¶¶ 23-24, 30-31. The total offense level is 23. PSR ¶ 23.

**B.    Criminal History Category and Guidelines Range**

Eltz has an extensive criminal history as an adult. PSR ¶¶ 35-40. Much of it is too old to score, including convictions for bail jumping (PSR ¶ 35), displaying a weapon (PSR ¶ 36), attempted theft in the first degree (PSR ¶ 37), and possession of ecstasy/possession of stolen property in the third degree (PSR ¶ 38). The offense that does score is a prior federal conviction for unlawful possession of a firearm in 2012, with a five-year prison sentence imposed. PSR ¶ 40. During supervised release, Eltz was arrested for possession of yet another firearm and spent another two years in prison. *Id.*

Eltz has three criminal history points, placing him in Category II. PSR ¶ 41. With a total offense level of 23 and a criminal history category of II, the advisory guidelines range is 51 to 63 months. PSR ¶ 89.

**III.    FACTORS RELATED TO SENTENCING RECOMMENDATION**

The United States respectfully requests that the Court sentence Eltz to 51 months of confinement, followed by a three-year term of supervised release. The United States believes this sentence is appropriate in light of "the nature and circumstances of the offense," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). It is also sufficient, but not greater than necessary, to achieve these goals. A review of pertinent Section 3553(a) sentencing factors supports the recommendation.

**A.    Nature and Circumstances, and Seriousness of the Offenses**

The nature and circumstances of Eltz's firearms offenses are extremely concerning, both on their face and in context. On their face, Eltz possessed multiple firearms – some with rounds chambered, some modified to function as machineguns, some with silencers. He was carrying two loaded firearms with rounds chambered and

United States' Sentencing Memorandum - 6
*United States v. Eltz*, CR23-5303DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

more than six dozen rounds of ammunition on his person at the auto glass business – all of which he stashed in their bathroom. There were more guns in the trunk – rifles, a shotgun, and another handgun. There were 360 rounds of various caliber ammunition loaded into magazines on his person, stashed in the bathroom, seated in some of the guns, and in the trunk. On these bare facts alone, a 51-month sentence would be appropriate.

But the *context* of Eltz's firearms possession is, as one officer put it, "beyond concerning." When Eltz arrived at the auto glass business armed to the teeth, he also had a military artillery simulator (a "Simulator, Projectile, Ground Burst, M115A2") and a large improvised explosive device (IED) in the trunk. Dkt. 1. The Pierce County Sheriff's Department Bomb Squad Technician who responded to the scene is an Army reservist who recognized the simulator as one used in military training exercises to create battlefield-like effects. He noted that these simulators contain approximately two ounces of explosive powder and, when detonated, produce an explosion that can be heard "blocks away" and would cause serious bodily injury to anyone too close to or in an enclosed space with the simulator. He also opined that the simulator was likely stolen from the military. The IED was about six inches long and appeared to be a thick cardboard tube, plugged on both ends, with a three-inch pyrotechnic fuse protruding from one end, all wrapped in a clear plastic wrap. An x-ray showed the tube to be almost entirely full of explosive powder.

And, of course, the other items in Eltz's trunk – the masks, the body armor, etc. – strongly suggest that Eltz's possession of the numerous handguns, rifles, and shotgun was not for self-defense, a response to PTSD or anxiety, or because he considered himself a gun collector.

**B.    History and Characteristics of the Defendant**

The United States acknowledges Eltz's methamphetamine addiction. PSR ¶ 74. Drugs are most probably responsible for the multiple times he has been shot at (hit twice), slashed, and stabbed. PSR ¶ 64. But he failed to take full advantage of both BOP

United States' Sentencing Memorandum - 7
*United States v. Eltz*, CR23-5303DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

programming during his prior federal prison term – completing RDAP twice - and the resources and assistance provided to him during his two previous terms of federal supervision, instead returning to drug use in 2021. PSR ¶¶ 74, 77.

And, Eltz has a history of possessing collections of items like the ones he had in this case. In 2007, he had a gun magazine loaded with 30 rounds of hollow point ammunition, a homemade silencer, ballistic helmet, handcuffs, emergency vehicle red light, sword, electronic stun gun, nun-chucks, knives, and a City of Milton "Director of Public Safety" badge. PSR ¶ 38. In 2012, Eltz had a stolen rifle with a silencer, three pistols, two other rifles, a US Army backback with Army gear, a Department of Defense identification card (in another name), multiple rifle and pistol magazines (loaded), law enforcement duty belt, a WSP "SWAT Sergeant" shirt, night vision goggles, large military-style knives, and more. PSR ¶ 40. At the time, he was driving an older style police vehicle that still had emergency lights. *Id.*

These repeated incidents, spread out over more than a decade and a half, show Eltz's history and characteristics, and support the recommended 51-month sentence.

**C.    Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence**

Eltz's criminal conduct started when he was just 14 years old. PSR ¶ 33. His persistent reoffending, including violations of state community custody, federal pretrial release, and federal supervision, show that Eltz has little respect for the law. PSR ¶¶ 38, 40. His decision to secrete bindles of contraband in his rectum when he knew he would be going to jail (irrespective of whether he believed he was going to Pierce County Jail or the FDC) likewise shows no respect for the law. A 51-month sentence of imprisonment reflects just punishment and – hopefully – provides the respect and deterrence previous state and federal prison terms did not.

United States' Sentencing Memorandum - 8
*United States v. Eltz*, CR23-5303DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**D.      Need to Protect the Public from Further Crimes, the Kinds of Sentences Available, and Any Necessary Educational or Vocational Training or Other Special Care**

A 51-month term of imprisonment protects the public from further crimes. The United States does not know of any necessary educational or vocational training, but to the extent Eltz can participate in BOP programming that furthers his education or vocational skills, he should do so. Participation in RDAP for a third time might help.

**E.      Need to Avoid Unwarranted Sentence Disparity Among Similarly Situated Defendants**

As the Probation Office noted, there have been more than 200 defendants over the past five years with the same advisory Guideline, final offense level, and criminal history category. PSR p. 24. The average sentence imposed for those defendants was 48 months, and the median length was 51 months. Looking at those statistics, the recommended 51-month sentence is not disparate.

## IV.    CONCLUSION

The § 3553(a) factors most important to the Court's consideration are the serious nature of Eltz's offenses, the repetitive nature of his conduct, the need to protect the public, and deterrence from future criminal conduct. The government respectfully recommends the Court impose 51 months of imprisonment followed by a three-year term

//

//

//

//

//

United States' Sentencing Memorandum - 9
*United States v. Eltz*, CR23-5303DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  of supervised release, and payment of the mandatory fee of $200.00, as a sentence

2  sufficient but not greater than necessary.

3       DATED this 20th day of June 2024.

4

5                                        Respectfully submitted,

6

7                                        TESSA M. GORMAN
                                         United States Attorney
8

9                                         *s/Marci L. Ellsworth*
                                         MARCI L. ELLSWORTH
10                                       Assistant United States Attorney
                                         United States Attorney's Office
11                                       1201 Pacific Avenue, Suite 700
                                         Tacoma, Washington 98402
12                                       Phone: 253-428-3819
                                         Email: Marci.Ellsworth@usdoj.gov
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

United States' Sentencing Memorandum - 10
*United States v. Eltz*, CR23-5303DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800